United States District Court
Eastern District of Michigan
Southern Division

United States of America,

Plaintiff,

v.

Chanise Coyne,

Defendant.

Case No. 26-CR-20082

Hon. David M. Lawson

# Plea Agreement

The United States of America and the defendant, Chanise Coyne, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

## 1. Count of Conviction

The defendant will plead guilty to Count 7 of the Indictment. Count 7 charges the defendant with wire fraud under 18 U.S.C. § 1343.

## 2. Statutory Minimum and Maximum Penalties

The defendant understands that the count to which she is pleading guilty carries the following maximum statutory penalties:

| | | |
|---|---|---|
| Count 7 | Term of imprisonment: | Up to 20 years |
| | Fine: | Up to $250,000 |
| | Term of supervised release: | Up to 3 years |

## 3. Elements of Count of Conviction

The elements of Count 1 are:

(1) The defendant knowingly participated in, or devised, a scheme to defraud or to obtain money or property;

(2) The scheme included a material misrepresentation or concealment of a material fact;

(3) The defendant had the intent to defraud; and

(4) The defendant used wire communication in interstate commerce, or caused another to use wire communication in interstate commerce, in furtherance of the scheme.

## 4. Agreement to Dismiss Remaining Charges

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the

Eastern District of Michigan will move to dismiss any remaining charges in the Indictment against the defendant in this case.

**5. Factual Basis**

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

From at least in or around April 2023, through at least in or around April 2025, in the Eastern District of Michigan and elsewhere, the defendant, Chanise Coyne devised, and knowingly participated in, a scheme to defraud and to obtain money. As part of the scheme, Coyne made numerous material misrepresentations. In doing so, Coyne acted with an intent to defraud and caused wire communications to be used in interstate commerce in furtherance of the scheme.

Specifically, it was the purpose of the scheme for Coyne to obtain money and enrich herself by inducing Victim A and Victim A's family members, through materially false and fraudulent representations, to provide her with supposed advance fee payments that she fraudulently misappropriated for her personal use. Coyne and Victim A were both residents of the Eastern District of Michigan during the scheme.

As part of the scheme, Coyne made repeated materially false and fraudulent representations that advance fee payments from Victim A and his family would be used to arrange for the participation of Victim A's minor daughter in various modeling events across the United States. Coyne misrepresented that these advance fee payments would be used for expenses such as airfare, hotels, clothing, seamstresses, and production costs, among other items. Coyne also misrepresented that she was working with a specific talent agent to facilitate the participation of Victim A's minor daughter in these modeling events. To further the scheme, Coyne fabricated communications—including supposed emails and text messages—and provided those fabricated communications to Victim A and his family. Coyne also fabricated invoices relating to the supposed modeling events for which she claimed to be collecting fees.

As a result of Coyne's misrepresentations, Victim A and his family were fraudulently induced into providing Coyne with over $4.6 million in supposed advance fee payments relating to various modeling events. Coyne misappropriated almost all of those funds for her own personal benefit. Significant sums of Victim A's money were used by Coyne for

gambling. None of the funds provided by Victim A and his family were used for the purposes that Coyne represented—and Victim A's daughter did not participate in a single modeling event resulting from Coyne's work.

Victim A and his family provided funds to Coyne through wire transfers, Zelle, PayPal, Square, Venmo, and check. In doing so, they utilized wire communications in interstate commerce.

Coyne acknowledges that her fraudulent scheme caused substantial financial hardship to Victim A and his family. Coyne acknowledges that as a result of her fraudulent scheme, Victim A and his wife suffered the substantial loss of savings, including retirement savings, and have had to make substantial changes to their employment, including Victim A postponing his retirement plans and his wife taking on additional employment.

Coyne acknowledges that her fraudulent scheme caused an actual loss of approximately $4,669,962.76.

**6. Advice of Rights**

The defendant has read the Indictment, has discussed the charges and possible defenses with her attorney, and understands the crime

charged. The defendant understands that, by pleading guilty, she is waiving many important rights, including the following:

A. The right to plead not guilty and to persist in that plea;

B. The right to a speedy and public trial by jury;

C. The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D. The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E. The right to confront and cross-examine adverse witnesses at trial;

F. The right to testify or not to testify at trial, whichever the defendant chooses;

G. If the defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

H. The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

I. The right to compel the attendance of witnesses at trial.

**7. Collateral Consequences of Conviction**

The defendant understands that her conviction here may carry additional consequences under federal or state law. The defendant understands that, if she is not a United States citizen, her conviction here may require her to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of her conviction here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from her conviction.

## 8. Defendant's Guideline Range

### A. Court's Determination

The Court will determine the defendant's guideline range at sentencing.

### B. Acceptance of Responsibility

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a) Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, her probation officer; obstructing justice in any way; denying her guilt on the offense to which she is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG

§ 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C. Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal Procedure 11(c)(1)(B) that the following guideline provisions apply:

| **Guideline Section** | **Description** |
|---|---|
| § 2B1.1(a)(1) | Base Offense Level: 7 |
| § 2B1.1(b)(1)(J) | Loss of More than $3,500,000 and less than $9,500,000: +18 |
| § 2B1.1(b)(2)(A)(iii) | Substantial financial hardship to one or more victims: +2 |

The parties have no other joint recommendations as to the defendant's guideline calculation.

### D. Factual Stipulations for Sentencing Purposes

The parties have no additional factual agreements for sentencing purposes.

### E. Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

The parties specifically agree to disagree on the applicability of USSG § 2B1.1(b)(10)(C), with the government reserving the right to argue the guideline applies and the defense reserving the right to argue that it does not apply.

### F. Not a Basis to Withdraw

The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if she disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

**9. Imposition of Sentence**

**A. Court's Obligation**

The defendant understands that in determining her sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

**B. Imprisonment**

**1. Recommendation**

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the government recommends that the defendant's sentence of imprisonment not exceed the midpoint of the defendant's guideline range as determined by the Court.

**2. No Right to Withdraw**

The government's recommendation in paragraph 9.B.1 is not binding on the Court. The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if

the Court decides not to follow the government's recommendation. If, however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

### C. Supervised Release

#### 1. Recommendation

The parties have no agreement as to supervised release.

#### 2. No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 9.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

### D. Fines

The parties have no agreement as to a fine.

### E. Restitution

The Court must order restitution to every identifiable victim of the defendant's offense.

The parties agree that restitution in the amount of $4,669,962.76 will be due and payable to Victim A, whose identity is known to the parties and will be provided to the Court.

The parties agree and understand that the United States may collect the full amount of the restitution from any or all of the defendants found responsible for this restitution. Credit for payments made by other defendants found responsible for this loss will be applied in a manner to ensure full recovery of the restitution.

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of her financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining her ability to pay restitution. The defendant agrees to complete and return the Financial Disclosure Form within three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

### F. Forfeiture

Pursuant to Fed. R. Crim. P. 32.2, 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), defendant agrees to forfeit to the United States any and all property, real or personal, which constitutes or is derived from proceeds traceable to her scheme to defraud in violation of 18 U.S.C. § 1343, as charged in the Indictment.

Defendant also agrees to the entry of a personal forfeiture money judgment against her in favor of the United States in the amount of **Four Million Six Hundred Sixty-Nine Thousand, Nine Hundred Sixty-Two Dollars and 76/100 ($4,669,962.76)**, representing the amount of proceeds she personally obtained or derived, directly, or indirectly, from her scheme to defraud in violation of 18 U.S.C. § 1343, as charged in the Indictment.

Defendant agrees to the entry of one or more orders of forfeiture, including a Preliminary Order of Forfeiture, containing the above referenced forfeiture of proceeds and the forfeiture money judgment, upon application by the United States at, or any time before, her sentencing. Defendant agrees that the forfeiture order will be final and effective upon entry by the Court.

Defendant acknowledges that she maintained the following asset with proceeds derived from her commission of the scheme to defraud described in the Indictment, and that the United States may forfeit this asset as proceeds traceable to the commission of her violation of 18 U.S.C. § 1343 (the "Subject Property"):

- 30709 Upland Drive, New Boston, MI 48164.

As part of this agreement, the United States agrees not to pursue forfeiture of the Subject Property so long as defendant fully complies with her obligations detailed in the following provisions:

- Defendant agrees to make voluntary monthly payments on her forfeiture money judgment balance at a continuing monthly rate of at least $935.00. Payments shall be made to the United States Marshals Service (1) electronically on the www.Pay.gov website, or (2) by certified check or money order to "United States Marshals Service" with reference to defendant's full name and case number, and delivered to:

  USMS – EDMI
  Attn.: Shannon Alexander
  Theodore Levin U.S. Courthouse
  231 W. Lafayette Blvd.
  Detroit, MI 48226

- The parties agree that Defendant's monthly payment obligation shall be suspended during any period of incarceration with the Federal Bureau of Prisons imposed as a sentence in this case. The agreed monthly minimum obligation payment shall begin six months after Defendant's release from the custody of the Federal Bureau of Prisons in this case if a sentence of incarceration is imposed.

- Defendant agrees failure to pay her minimum monthly forfeiture money judgment payment, or cure delinquency within 30 days, shall be considered default, and the United States may move to forfeit the Subject Property to satisfy the forfeiture money judgment. Formal notice of delinquency or default under 18 U.S.C. § 3573 is waived. The United States' *lis pendens* shall remain on the Subject Property until the forfeiture money judgment is paid in full, or until the United States and Defendant agree otherwise.

- Defendant agrees to complete Form USM-634 within 30 days of her sentencing in this case, memorializing the terms herein regarding the monthly payment of her forfeiture money judgment. Defendant agrees she is required to submit annual financial statements while the money judgment is outstanding, and notify, within 30 days, the United States Marshals Service and the United States Attorney's Office of any material change in her economic circumstances that affects her ability to pay the money judgment.

Subject to the preceding paragraphs, defendant agrees that the forfeiture money judgment may be satisfied, to whatever extent possible, from property owned or under her control. Defendant explicitly agrees to the forfeiture of any other assets she may have as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes her right to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

Defendant will cooperate with the government as requested in connection with the government's efforts to identify, locate, seize, and forfeit property under this agreement. Defendant agrees to take whatever steps are necessary to deliver possession of, and clear title to, any property identified for forfeiture and will execute such legal documents as may be required to transfer title of the property to the United States. Defendant shall take whatever steps are necessary to ensure that her property is not sold, disbursed, hidden, wasted, or otherwise made unavailable for forfeiture.

Defendant waives the requirements of Fed. R. Crim. P. 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, pronouncement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that she understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise her of this, pursuant to Fed. R. Crim. P. 11(b)(1)(J), at the time her guilty plea is accepted. Defendant waives her right to have a jury determine the forfeitability of her interest in the Subject Property as provided by Fed. R. Crim. P. 32.2(b)(5).

Defendant knowingly, voluntarily, and intelligently waives any statutory and constitutional challenge to the above-described forfeiture including any challenge based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

**G. Special Assessment**

The defendant understands that she will be required to pay a special assessment of $100, due immediately upon sentencing.

**10. Appeal Waiver**

The defendant waives any right she may have to appeal her conviction on any grounds. The defendant also waives any right she may have to appeal her sentence on any grounds, unless her sentence of imprisonment exceeds the top of the guideline range as determined by the Court.

**11. Collateral Review Waiver**

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right she may have to challenge her conviction or sentence by collateral review, including, but not limited to, any right she may have to challenge her conviction or sentence on any grounds under 28 U.S.C.

§ 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

**12. Remedies for Withdrawal, Breach, Rejection, or Vacatur**

If the defendant is allowed to withdraw her guilty plea or breaches this agreement, or if the Court rejects this agreement, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the defendant has been permitted to plead guilty to a lesser-included offense, the government may also reinstate any charges or file any additional charges against the defendant for the greater offense, and the defendant waives her double-jeopardy rights with respect to the greater offense. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives her right to challenge those charges on the ground that they

were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

**13. Use of Withdrawn Guilty Plea**

The defendant agrees that if she is permitted to withdraw her guilty plea for any reason, she waives all of her rights under Federal Rule of Evidence 410, and the government may use her guilty plea, any statement that the defendant made at her guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

**14. Parties to Plea Agreement**

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

**15. Scope of Plea Agreement**

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant

at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

## 16. Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00pm on May 15, 2026. The government may withdraw from this agreement at any time before the defendant pleads guilty.

JEROME F. GORGON JR
United States Attorney

John K. Neal
Chief, Anti-Corruption Unit
Assistant United States Attorney

Andrew J. Yahkind
Assistant United States Attorney

Dated: 5/12/26

By signing below, the defendant and her attorney agree that the defendant has read or been read this entire document, has discussed it with her attorney, and has had a full and complete opportunity to confer with her attorney. The defendant further agrees that she understands this entire document, agrees to its terms, has had all of her questions answered by her attorney, and is satisfied with her attorney's advice and representation.

John Dakmak
Attorney for Defendant

Chanise Coyne
Defendant

Dated: 5-14-26