UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff, CRIMINAL NO. 26-CR-20082

v. HONORABLE DAVID M. LAWSON

CHANISE COYNE,

Defendant.

__________________________________/

## Government's Sentencing Memorandum

Chanise Coyne did more than steal millions of dollars; she preyed on the deepest hopes of a family devoted to their child. Through an elaborate fraud built on impersonation, forgery, and exploitation, she pushed a local family to drain their savings and left them with unimaginable financial and emotional devastation.

For the reasons stated in this memorandum, Coyne's sentencing guideline range should be calculated as **63-78 months' imprisonment**, and the Court should impose a sentence of **70 months' imprisonment**.

## I. Facts and Procedural History

On February 19, 2026, Coyne was charged with seven counts of wire fraud, in violation of 18 U.S.C. § 1343, and five counts of money laundering, in violation of 18 U.S.C. § 1957. (ECF No. 1.) On May 19, 2026, Coyne appeared before this

Court and entered a guilty plea to one count of wire fraud. That plea was entered pursuant to a Rule 11 plea agreement. (ECF No. 25.) As part of the plea agreement, the government agreed to move to dismiss the remaining charges against Coyne. (*Id.* at PageID.83.)

In her plea agreement, Coyne admitted to devising and executing a two-year scheme to defraud a local family of millions of dollars. (*Id.* at PageID.84.) Coyne claimed that money would be used to arrange for participation of their minor daughter in modeling events across the country. (*Id.* at PageID.85.) Coyne falsely represented the payments would be used for expenses such as airfare, hotels, clothing, seamstresses, and production costs. (*Id.*) Through her lies, Coyne obtained more than $4.6 million, almost all of which she misappropriated for her own benefit. (*Id.*) None of the funds provided to Coyne were used in connection with modeling events. (*Id.* at PageID.85.) Instead, Coyne spent significant amounts of the victims' money on gambling activity. (*Id.* at PageID.84-85.)

To bolster her fraud, Coyne impersonated third parties, fabricated communications, and generated fake invoices. As noted in the PSR, Coyne pretended to be a talent agent named "Vivian Sanchez" and a Nike employee named "Isiah." (PSR ¶ 11.) She also created fake invoices for companies such as Nike and American Girl with detailed line-item expenses and misappropriated logos. (*Id.*)

Below are examples of fraudulent invoices sent by Coyne to her victims:

CONTRACT CHANGE EVENT [redacted] ACCOUNT

AMOUNTS MISSING FROM INITIAL AUDIT AND FORWARD- FINAL COPY

| | | |
|---|---|---|
| 2024 OBLIGATION FASHION WEEK | | |
| ADDT'L DAY 1 | | |
| PRODUCTION PROCESSING | | 17111 |
| FINAL SEAMSTRESS | | 7472 |
| HAIR AND MAKE UP | | 3798 |
| TRANSPORTATION | | 1232 |
| HOTEL | | 759 |
| AIR ADJUSTMENT | | 1897 |
| 2024 OBLIGATION FASHION WEEK | | |
| ADDT'L DAY 2 | | |
| PRODUCTION PORTFOLIO | | 25000 |
| PROCESSING FINAL SEAMSTRESS | | 9831 |
| EDIT PROCESSING | | 13979 |
| TRANSPORTATION | | 1232 |
| HAIR AND MAKE UP | | 2500 |
| 2024 OBLIGATION FASHION WEEK | | 25000 |
| ADDT'L DAY 3 CONTRACT | | 9831 |
| PRODUCTION PORTFOLIO | | 13979 |
| PROCESSING FINAL SEAMSTRESS | | 1232 |
| EDIT PROCESSING | | 2500 |
| TRANSPORTATION | | |
| HAIR AND MAKE-UP | | |
| TOTAL | | 119353.36 |
| JANUARY CREDIT | | 22546.36 |
| REMAINING BALANCE | | 96807 |
| REIMBURSEMENT AMOUNT TO REP | | 96807 |
| ACCOUNTING- PLEASE MOVE JANAUARY 2024 BONUS TO FEBRUARY. PLEASE KEEP APRIL EVENT ON BOOKS | | |
| | | APPROVED: ____________ |

American Girl.

[redacted]

# FINAL

BALANCE SHEET/A KOSMAN/809124AK

[redacted]

| WISCONSIN- 3/27/24-3/31/24 | | |
|---|---|---|
| AIR (2) | 580PE6713 | 636.49 |
| HOTEL | 1594443C | 791.24 |
| TRANSPORTATION | R | 450 |
| PRODUCTION | R | 2687.01 |
| HAIR | R | 1587 |
| MAKEUP | R | 989.22 |
| CLOTHING | R | 5745.66 |
| DOLL EXPERIENCE | R | 4398 |
| PROPOSAL A INCREASE | R | 1197.44 |
| COL PAID 7/24/23 | R | 15982.77 |
| FINAL SEAMSTRESS | R | 3000 |
| AUDIT | R | 2000 |
| TOTAL | | 39464.83 |
| REIMBURSE @ CONTRACT | | 39464.83 |
| | | |

[redacted]

| OBLIGATION ONE – 11/21/23-11/26/23 | | |
|---|---|---|
| AIR (2) | TBD | 1200 |
| HOTEL | 93142673 | 1587.11 |
| TRANSPORTATION | R | 1198.14 |
| PRODUCTION | R | 921.45 |
| HAIR | R | 489.22 |
| MAKEUP | R | 977.34 |
| CLOTHING | R | 5109.74 |
| GALA CLOTHING/HM/ACC | R | 4823.78 |
| GALA PRESS HM | R | 1789.22 |
| CHARITY GALA | | 3000 |
| FORMAL WEAR GALA | R | 816.73 |
| PROPOSAL A INCREASE | R | 2390.31 |
| SEAMSTRESS | R | 1525.36 |
| AUDIT | R | 5531.42 |
| FINAL SEAMSTRESS | R | 3500 |
| TOTAL | | 26328.40 |
| REIMBURSE @ OBLIGATION | | 31859.82 |
| OTHER REIMBURSEMENT | | |
| MEMBERSHIP | REIMBURSED YEARLY @ 10K/YR EVERY MARCH | 40000 |
| SIGN ON BONUS AT CONTRACT | PAYMENT @ CONTRACT | 65000 |
| CONTRACT | 4 YEARS/4 OBLIGATION/YR+55K INTL BON | 425000-106250/YR |
| | | |

- NO FUTURE FUNDS WILL BE REQUESTED UNLESS ADDITONAL CHANGE IS APPROVED FROM THE FAMILY THAT WOULD NEED ADDITIONAL FUNDING.
- ALL REIMBURSEMENT BALANCES SHOW ON ABOVE STATEMENTS WILL BE PROVIDED TO THE REP WITH OR WITHOUT CONTRACT SIGNING COMMENCEMENT
- ALL 2024 & 2025 OBLIGATIONS ARE FULLFILLED
- MIAMI EVENT MOVED TO 2025
- FINAL COPY

Coyne also created an email address for Vivian Sanchez that she controlled. (PSR ¶ 12.) And Coyne developed elaborate stories to induce her victims into parting

with funds for a number of purported modeling events. For example, in November 2023 Coyne sent her victims a supposed screenshot of an email from "Isiah" at Nike, which was followed by a fake message from Vivian Sanchez discussing Sanchez's purported sponsorship of the victims' minor daughter (as long as they came up with a $97,893 payment):

**Coyne Chanise**

Morning! Lots going on late last night. Please review Isiahs email below. After that one I have attached an email I received from Viv late after. Very kind that she wants to sponsor [redacted] Review both and let me know. I will be volunteering at school and then away this evening but can help via text when I can.

11/3/2023 11:38:01 AM(UTC+0)

Chanise- please see email below
*************************

M[redacted]

Thank you for your response. As much as we would love to have [redacted] I completely understand your restraints and I appreciate your quick response.

I have passed the information on to our Management time. Considering [redacted] entire team is participating, Management has decided to pull her from NYFW. They will be training for this broadcasted event and do not want [redacted] to feel like an outcast while everyone else is participating/training. We strive to not allow for any Rep to feel left out and believe this road will be better for [redacted]

Management has reached out to scheduling to find her another event equivalent to this. As Education is a high priority, please send open weeks/dates in 2024 so scheduling can review events in that time frame.

Isiah

Chanise- I really been thinking about all this since our conversation. I know Isiah means well and I understand why she would need to be moved but the [redacted] have worked so hard to get her to this level. They unfortunately can't do this due to the mor set back and I can completely understand as my hospital stay will for sure set us back once the bills start rolling in.

I know [redacted] joked about Blake adopting but I would really like to help if the [redacted] family can come together and make this work.

Please do not advertise this as I don't do this amount of my business often. Do you think they can come up with 97893 and my business will sponsor the rest? I only have one stipulation that [redacted] will model for my dresses when needed (obviously when I ship them to you) I would love more than anything to help 100% but know these hospital bills will be high coming soon.

Please talk it over with [redacted] and [redacted] before they rearrange her. I would hate to see her get demoted. It doesn't look well starting out and we have talked about how things get spread in this industry. I want to help as much as I can. And if they can't do it, I completely understand. I feel what they feel with my set back as well.

Talk soon -
Viv

Even when her victims had already provided her with millions of dollars and were struggling to come up with additional funds, Coyne kept pushing them proposing that they create a "payment plan"




Coyne ended up receiving an additional $40,000 payment after supposedly conveying her victims' financial struggles to "Vivian Sanchez." (PSR ¶ 13.)

Coyne has admitted that her fraudulent scheme caused an actual loss of over $4.6 million. (PageID.87.)

Pursuant to the plea agreement, the parties jointly recommended that the following guideline calculations apply:

- Base Offense Level (§ 2B1.1(a)(1)): 7
- Loss of More than $3.5 million and less than $9.5 million (§ 2B1.1(b)(1)(J)): +18
- Substantial financial hardship to victim(s) (§ 2B1.1(b)(2)(A)(iii)): +2

(PageID.90.)

The parties expressly agreed to disagree on the applicability of a sophisticated-means enhancement pursuant to § 2B1.1(b)(10)(C). (PageID.91.)

## II. The PSR Correctly Calculated a Guideline Range of 63-78 Months' Imprisonment

The PSR calculated Coyne's guideline range at 63-78 months' imprisonment, based upon an offense level calculation of 26 and a criminal history category of I. (PSR ¶ 81.) The PSR's offense level determination is based on the following calculation:

- Base Offense Level (§ 2B1.1(a)(1)): 7
- Loss of More than $3.5 million and less than $9.5 million (§ 2B1.1(b)(1)(J)): +18
- Substantial financial hardship to victim(s) (§ 2B1.1(b)(2)(A)(iii)): +2
- Sophisticated Means (§ 2B1.1(b)(10)(C)): +2
- Acceptance of Responsibility (§ 3E1.1(b)): -3
- Total Offense Level: 26

(PSR ¶¶ 24-34.)

The defense has objected to the PSR's application of the sophisticated-means enhancement. The Court should reject that objection.

As noted in the government's response to the objection, the Sixth Circuit has made clear that the sophisticated-means enhancement is triggered based not on the

"individual steps of the scheme, but instead [on] the totality of the defendant's conduct." *United States v. Harris*, No. 24-5622, 2025 WL 3657141, at *7 (6th Cir. Dec. 17, 2025) (citations omitted). Here, the totality of Coyne's conduct shows a complex and multifaceted fraud.

Coyne does not dispute that she impersonated third parties, generated numerous fabricated invoices, created false communications, set up a fictitious email account, and ultimately induced her victims into making over $4.6 million in payments in connection with a series of purported modeling events.

The Sixth Circuit has held that impersonating others and creating false documents—just a portion of the deceptive conduct in which Coyne engaged—is sufficient to trigger the sophisticated-means enhancement. *See United States v. Hamaed*, 178 F.4th 281, 304 (6th Cir. 2026) ("Deceptive practices such as falsifying records exemplify the use of sophisticated means.") (citations omitted); *United States v. McDaniels*, No. 25-5056, 2026 WL 196219, at *2 (6th Cir. Jan. 26, 2026) ("Our court and several others have determined that a defendant uses sophisticated means when he repeatedly steals a victim's identity and uses forged documents to further the fraud.") (citations omitted); *United States v. Crosgrove*, 637 F.3d 646, 667 (6th Cir. 2011) ("The repeated use of fictitious identities can justify a sophisticated means enhancement, particularly when the identity is reinforced through other deceptive practices…") (citations omitted).

In objecting to application of the enhancement, Coyne notes that she deposited her fraud proceeds “directly into her personal bank account” and did not use fictitious entities or multiple bank accounts to conceal her transactions. But the Sixth Circuit has made clear that such activity is not a prerequisite for the enhancement to apply. *See United States v. Igboba,* 964 F.3d 501, 512 (6th Cir. 2020) (“Defendant notes several times that these email aliases ‘were easily traceable to his address’ and that the tax refunds were placed directly into accounts associated with him. But the fact that Defendant failed to successfully hide his identity does not indicate that his means were not sophisticated. . .. We have applied the enhancement to defendants who ‘routed money through [their] own bank account’ and ‘failed to disguise [their] identity’ before.” (citations omitted).

Application of the sophisticated-means enhancement is particularly warranted here as Coyne’s deception was multifaceted, repeated, and extremely successful in inducing the victims to provide her with millions of dollars through recurring falsehoods over an extended period of time.

## III. Section 3553(a) Factors

The Supreme Court has noted that, in formulating the Sentencing Guidelines, the U.S. Sentencing Commission's goal is to carry out the objectives of 18 U.S.C. § 3553(a). *United States v. Rita*, 551 U.S. 338 (2007). While advisory, the Guidelines remain an important factor in fashioning a just sentence. This is because "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 350. Moreover, the Guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007).

Here, the starting point is 63-78 months' imprisonment.

The guideline range is particularly important in this case because, as the Sixth Circuit has noted, "[o]ne of the central reasons for creating the sentencing guidelines was to ensure stiffer penalties for white-collar crimes and to eliminate disparities between white-collar sentences and sentences for other crime." *United States v. Davis*, 537 F.3d 611, 617 (6th Cir. 2008) (citations omitted). Specifically, Congress was concerned that, prior to enactment of the Sentencing Guidelines, "[m]ajor white collar criminals often [were] sentenced to small fines and little or no imprisonment. Unfortunately, this creates the impression that certain offenses are punishable only by a small fine that can be written off as a cost of doing business." S. REP. 98-225, 76, 1984 U.S.C.C.A.N. 3182, 3259; *see also* U.S.S.G. Ch. 1 Pt. A(4)(d) ("Under pre-

guidelines sentencing practice, courts sentenced to probation an inappropriately high percentage of offenders guilty of certain economic crimes. . . . The Commission concluded that the definite prospect of prison, even though the term may be short, will serve as a significant deterrent, particularly when compared with pre-guidelines practice where probation, not prison, was the norm.”).

**a. The Nature and Circumstances of the Offense**

Coyne exploited the love of parents for their daughter and their willingness to give up enormous financial resources to support her dreams.

Notably, Coyne’s crime was not a one-time lapse in judgment. She repeatedly made the conscious decision to lie to her victims through elaborate stories connected to multiple supposed modeling events. And she backed up those lies with fabricated communications and records.

While much of the money Coyne stole was gambled away by her, she also did not hesitate to live lavishly while executing her fraud. For example, in April 2024, Coyne spent over $100,000 on Taylor Swift concert tickets:

BANK OF AMERICA

CHANISE COYNE | Account # [redacted] | March 28, 2024 to April 26, 2024

## Withdrawals and other subtractions - continued

### ATM and debit card subtractions - continued

| Date | Description | Amount |
|---|---|---|
| [redacted] | | |
| 04/23/24 | CHECKCARD 0423 VIVID SEATS TAYLO 8668488499 IL 55429504114717715504643 | -45,186.36 |
| 04/23/24 | PURCHASE 0423 FANDUELCASPRIMARY 9717083015 NJ | -20,000.00 |
| 04/23/24 | PURCHASE 0423 FANDUELCASPRIMARY 9717083015 NJ | -20,000.00 |
| 04/23/24 | PURCHASE 0423 FANDUELCASPRIMARY 9717083015 NJ | -20,000.00 |
| 04/23/24 | PURCHASE 0423 FANDUELCASPRIMARY 9717083015 NJ | -20,000.00 |
| 04/23/24 | PURCHASE 0423 FANDUELCASPRIMARY 9717083015 NJ | -4,000.00 |
| 04/23/24 | CHECKCARD 0420 PP*APPLE.COM/BILL 4029352244 CA 55429504113852712884788 RECURRING | -7.41 |
| 04/23/24 | PURCHASE 0423 VIVID SEATS TAYLO 8668488499 IL | -29,359.00 |
| 04/24/24 | PURCHASE 0423 TARGET.COM * 8005913869 MN | -40.27 |
| 04/24/24 | PURCHASE 0424 AMZN Mktp US*641N 8662161072 WA | -134.61 |
| 04/24/24 | PURCHASE 0423 VIVID SEATS TAYLO 8668488499 IL | -29,359.00 |
| 04/24/24 | PURCHASE 0424 AMZN Mktp US*3C9B 8662161072 WA | -176.57 |
| 04/24/24 | CHECKCARD 0423 DELTA 8002211212 CA 55417344115871151746541 | -478.20 |
| 04/24/24 | CHECKCARD 0423 DELTA 8002211212 CA 55417344115871151746574 | -478.20 |
| 04/24/24 | CHECKCARD 0423 DELTA 8002211212 CA 55417344115871151746558 | -478.20 |
| 04/24/24 | CHECKCARD 0423 DELTA 8002211212 CA 55417344115871151746590 | -478.20 |

According to retailer Vivid Seats, those expenditures were for front-row seats in Miami Gardens, Florida:

| Order Date | Billing Full Name | Event | Event Date | Event Category | Venue Name | Venue City | Seat Section | Seat Row | Ticket Quantity | Transaction Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 2024-04-22 19:21:07 | Chanise M Coyne | Taylor Swift with Gracie Abrams | 2024-10-20 | Concert | Hard Rock Stadium | Miami Gardens | A14 | 1 | 4 | $45,186.36 |
| 2024-04-23 07:52:10 | Chanise Coyne | Taylor Swift with Gracie Abrams | 2024-10-20 | Concert | Hard Rock Stadium | Miami Gardens | A14 | 1 | 2 | $29,359.00 |
| 2024-04-23 10:24:12 | Chanise Coyne | Taylor Swift with Gracie Abrams | 2024-10-20 | Concert | Hard Rock Stadium | Miami Gardens | A14 | 1 | 2 | $29,359.00 |

And in June 2024, she spent similar amounts on additional Taylor Swift tickets in Florida while also spending extravagantly on Stanley Cup final tickets:

**Account**

- Name: Chanise Coyne
- Username: [redacted]
- Phone Number: [redacted]
- Email Address: [redacted]
- Billing Address:
  - Chanise Coyne
  - [redacted]

**Purchases:**

- Order 6P2-GN556J8
  - Placed: 6/6/2024 5:28 at PM PDT
  - Total: US $15,737.50
  - Event: Taylor Swift
  - Event Venue: Hard Rock Stadium, Miami Gardens, FL
  - Time of Event: 10/20/2024 at 7:00 PM EST
  - Ticket Quantity: 1
  - Ticket Type: Admission Ticket / Section: A14, Row: 1
  - Card Type: Mastercard debit card
  - Last Four on Card: 3268
  - Card Expiry Date: 04 / 2029

- Order 6P2-YE85596
  - Placed: 6/15/2024 at 11:53 AM PDT
  - Total: US $27,130.00
  - Event: Taylor Swift
  - Event Venue: Hard Rock Stadium, Miami Gardens, FL
  - Time of Event: 10/20/2024 at 7:00 PM EST
  - Ticket Quantity: 1
  - Ticket Type: Admission Ticket / Section: A14, Row: 1

SEAT GEEK

  - Card Type: Mastercard debit card
  - Last Four on Card: 3268
  - Card Expiry Date: 04 / 2029
  - Promo code used: No
  - Refunded: No

- Order 6P2-93RYLP9
  - Placed: 6/15/2024 at 2:01 PM PDT
  - Total: US $34,725.00
  - Event: Taylor Swift
  - Event Venue: Hard Rock Stadium, Miami Gardens, FL
  - Time of Event: 10/20/2024 at 7:00 PM EST
  - Ticket Quantity: 1
  - Ticket Type: Admission Ticket / Section: A14, Row: 1
  - Card Type: Mastercard debit card
  - Last Four on Card: 3268
  - Card Expiry Date: 04 / 2029
  - Promo code used: No
  - Refunded: No

Order 6P2-NVK5NJV
  - Placed: 6/11/2024 at 7:45 AM PDT
  - Total: US $22,533.00
  - Event: Stanley Cup Final: Edmonton Oilers at Florida Panthers (Game 5 - Home Game 3)
  - Event Venue: Amerant Bank Arena, Sunrise, FL
  - Time of Event: 6/18/2024 at 8:00 PM EST
  - Ticket Quantity: 12
  - Ticket Type: Admission Tickets / Section: 108, Row: 10, Seats: 8-19
  - Card Type: Mastercard debit card
  - Last Four on Card: 3268
  - Card Expiry Date: 04 / 2029
  - Promo code used: No
  - Refunded: No

Order 6P2-D765EQZ
  - Placed: 6/15/2024 at 9:35 AM PDT
  - Total: US $20,620.00
  - Event: Taylor Swift
  - Event Venue: Hard Rock Stadium, Miami Gardens, FL
  - Time of Event: 10/20/2024 at 7:00 PM EST
  - Ticket Quantity: 1
  - Ticket Type: Admission Ticket / Section: A14, Row: 1
  - Card Type: Mastercard debit card
  - Last Four on Card: 3268
  - Card Expiry Date: 04 / 2029
  - Promo code used: No
  - Refunded: No

SEAT GEEK

- Order 6P2-V7VRLGZ
  - Placed: 6/23/2024 at 10:23 AM PDT
  - Total: US $6,242.84
  - Event: Stanley Cup Final: Edmonton Oilers at Florida Panthers (Game 7 - Home Game 4)
  - Event Venue: Amerant Bank Arena, Sunrise, FL
  - Time of Event: 6/24/2024 at 8:00 PM EST
  - Ticket Quantity: 2
  - Ticket Type: Admission Tickets / Section: 111, Row: 25, Seats: 15-16
  - Card Type: Mastercard debit card
  - Last Four on Card: 3268
  - Card Expiry Date: 04 / 2029
  - Promo code used: No
  - Refunded: No

- Order 6P2-YEKJDEL
  - Placed: 6/26/2024 at 7:41 AM PDT
  - Total: US $10,430.87
  - Event: Taylor Swift
  - Event Venue: Hard Rock Stadium, Miami Gardens, FL
  - Time of Event: 10/20/2024 at 7:00 PM EST
  - Ticket Quantity: 4
  - Ticket Type: Admission Tickets / Section: A14, Row: 2
  - Card Type: Mastercard debit card
  - Last Four on Card: 3268
  - Card Expiry Date: 04 / 2029
  - Promo code used: Yes
    - Discount [redacted] used and covered $28,649.13 of the order
    - The customer paid the remaining balance of $10,430.87 with their debit card

June 2024 also saw a $22,875 expenditure by Coyne with Royal Caribbean Cruises:

BANK OF AMERICA

CHANISE COYNE | Account [redacted]ay 30, 2024 to June 26, 2024

## Withdrawals and other subtractions - continued

ATM and debit card subtractions - continued

| Date | Description | Amount |
|---|---|---|
| 06/12/24 | CHECKCARD 0611 DELTA 8002211212 CA 55417344164871641860126 | -70.01 |
| 06/12/24 | CHECKCARD 0611 DELTA 8002211212 CA 55417344164871641860118 | -70.01 |
| 06/12/24 | CHECKCARD 0611 DELTA 8002211212 CA 55417344164871641860076 | -70.01 |
| 06/12/24 | CHECKCARD 0611 DELTA 8002211212 CA 55417344164871641860092 | -70.01 |
| 06/12/24 | CHECKCARD 0611 DELTA 8002211212 CA 55417344164871641860043 | -70.01 |
| 06/12/24 | CHECKCARD 0611 DELTA 8002211212 CA 55417344164871641860068 | -70.01 |
| [redacted] | | |
| 06/12/24 | CHECKCARD 0611 SEATGEEK TICKETS NEW YORK NY 82117554163000003704597 | -22,533.00 |
| [redacted] | | |
| 06/12/24 | PURCHASE 0611 FANDUELCASPRIMARY 9717083015 NJ | -9,000.00 |
| 06/12/24 | PURCHASE 0611 FANDUELCASPRIMARY 9717083015 NJ | -20,000.00 |
| 06/12/24 | PURCHASE 0611 FANDUELCASPRIMARY 9717083015 NJ | -10,000.00 |
| 06/12/24 | PURCHASE 0611 IC* INSTACART*161 SAN FRANCISCOCA | -98.37 |
| 06/12/24 | PURCHASE 0612 AIRBNB INC 8554247262 CA | -1,000.00 |
| [redacted] | | |
| 06/13/24 | PMNT SENT 0611 PAYPAL *CG818V 8882211161 MI 52653844165067699618676 | -10,290.30 |
| 06/13/24 | PURCHASE 0612 HM.COM 8554667467 NY | -44.11 |
| 06/13/24 | PURCHASE 0612 CHEWY.COM 8006724399 FL | -127.25 |
| 06/13/24 | PURCHASE 0613 AMZN Mktp US*DU76 8662161072 WA | -263.76 |
| 06/13/24 | CHECKCARD 0612 ROYAL CARIBBEAN C 8665627625 FL 72701784164202225429905 | -22,875.76 |
| [redacted] | | |
| 06/13/24 | PURCHASE 0612 FANDUELCASPRIMARY 9717083015 NJ | -6,000.00 |
| 06/13/24 | PURCHASE 0612 FANDUELCASPRIMARY 9717083015 NJ | -20,000.00 |
| 06/13/24 | PURCHASE 0612 FANDUELCASPRIMARY 9717083015 NJ | -20,000.00 |
| 06/13/24 | PURCHASE 0612 FANDUELCASPRIMARY 9717083015 NJ | -20,000.00 |
| 06/13/24 | PURCHASE 0612 IC* INSTACART SAN FRANCISCOCA | -111.88 |
| 06/13/24 | PURCHASE 0612 TARGET.COM * 8005913869 MN | -74.20 |
| 06/13/24 | CHECKCARD 0613 CHALKTALKSPOCHALK 2038401860 CT 52653844165716110729104 | -47.39 |
| 06/13/24 | CHECKCARD 0612 SQ *ROCKYS FROZEN Romulus MI 55432864164201317439716 | -20.35 |

continued on the next page

While Coyne was having a ball, her victims' lives were being destroyed. Their impact statements show the wreckage caused by Coyne's conduct. Victim A notes that he has had to delay his retirement and find employment in another state, causing

him to miss family events. He describes the financial and emotional damage as "unconscionable" and notes that his family had to borrow from relatives and sell assets to come up with money for Coyne. In her statement, Victim A's wife details the "emotional, physical, and financial destruction" caused by Coyne's exploitation. She highlights the "elaborate false reality" created by Coyne with "[e]very fabricated document, every false representation, and every deception," notes that she had worked three jobs to help fund her daughter's ambitions, and details the severe trauma inflicted on her by Coyne.

**b. History and Characteristics of the Defendant**

Chanise Coyne had a skillset that allowed her to make a living honestly. Instead, she chose to steal millions through elaborate fraud.

To her credit, Coyne appears to have avoided interaction with the criminal justice system prior to this point, maintained consistent employment through her adult life, and served as a dedicated and supportive family member.

However, although Coyne is technically a "first-time criminal" because she has no prior convictions, she committed fraud on countless discrete occasions. This conduct differentiates Coyne from first-time offenders whose conduct was actually a "one-time thing." *See United States v. Folliet*, 574 F. App'x 651, 658 (6th Cir. 2014) ("Though Defendant might have been a 'first time criminal' in the sense that she had no prior convictions, the district court mentioned several times that 'this was

not a one-time thing'—Defendant stole countless times from the victim and various charities over the course of seven years.").

**c. Seriousness of the Offense, Promotion of Respect for the Law, and Just Punishment for the Offense**

Coyne's crime was serious. She took everything an innocent family could give her—and then she kept trying to take more.

A just punishment for Coyne would be 70 months' imprisonment. Such a custodial sentence would meet the goal of just punishment, promote respect for the law, and recognize the seriousness of Coyne's offense.[1]

**d. Adequate Deterrence and Protection of the Public**

As the Sixth Circuit has acknowledged, "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (citations omitted).

---

[1] The government's sentencing recommendation in this memorandum is based on the PSR's guideline calculation. Should the Court disagree with the PSR and government and make a finding that the sentencing guideline range is lower, the government, pursuant to its plea agreement, recommends a sentence that does not exceed the mid-point of the applicable guideline range as determined by the Court.

### e. Providing Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner; Kinds of Sentences Available and the Need to Avoid Unwarranted Sentencing Disparities

Notably, as the PSR recognizes, after excluding defendants who received a § 5K1.1 substantial assistance departure motion, 98% of defendants with Coyne's guideline scoring received a prison sentence. (PSR ¶ 106.) The average sentence imposed on those defendants was 48 months' imprisonment. (*Id.*) A higher, within-guideline sentence is warranted here given the repeated, deliberate, and elaborate nature of Coyne's fraud, which preyed upon the most meaningful emotional bonds that exist.

## IV. Restitution

Under the Mandatory Victims Restitution Act, restitution is required as Coyne's offense involved "fraud" and "deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). Coyne has agreed to pay restitution in the amount of $4,669,962.76, which is the same restitution figure determined in the PSR. (PSR ¶ 107.)

## V. Conclusion

For the reasons discussed above, Coyne's sentencing guideline range should be calculated as 63-78 months' imprisonment and the Court should impose a sentence of **70 months' imprisonment**.

Respectfully submitted,

JEROME G. GORGON JR
United States Attorney

s/Andrew J. Yahkind
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226

Dated: September 15, 2026

## Certificate of Service

I certify that on September 15, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

John Dakmak
Attorney for Chanise Coyne

I also certify that I will, on today's date, email a copy of the foregoing document to Nat Karpac, the assigned probation officer in this matter.

s/Andrew J. Yahkind
Andrew J. Yahkind
Assistant U.S. Attorney
United States Attorney's Office